IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. NOLLETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEREMEY J. NOLLETT, APPELLANT.

Filed November 29, 2022.    No. A-22-049.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

Desirae M. Solomon, Attorney at Law, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jeremey J. Nollett appeals the Buffalo County District Court's order that dismissed his postconviction motion without an evidentiary hearing. On appeal, he raises five ineffective assistance of counsel claims. However, each of his claims fail either because they are not specifically pled or because the record refutes them; thus, we affirm the court's order.

## BACKGROUND

In December 2018, Nollett was charged with one count of first degree sexual assault of a child and one count of incest. Nollett's stepdaughter, A.V., alleged that from September 14 to December 14, her stepfather had sexually assaulted her numerous times.

Nollett originally retained private counsel to represent him. Nollett waived his right to a preliminary hearing and pled not guilty prior to arraignment. The final pretrial hearing was scheduled for March 22, 2019, but the district court later granted a continuance. This was the first

in a series of continuances, and during these continuances, Nollett filed motions for discovery, a motion for deposition of the victim, and a notice of intent to use alibi evidence. The district court subsequently granted his motions.

In August 2019, the district court held a plea hearing and pretrial conference. Nollett maintained his plea of not guilty. Trial was set for October 21, but another continuance moved the trial to November.

Before the November 2019 trial, Nollett's counsel filed a motion to withdraw, citing a deterioration in the attorney-client relationship. Nollett filed a motion to continue. The district court overruled the motion to withdraw until substitute counsel entered an appearance and granted the motion to continue upon a written waiver of speedy trial. Trial was set for February 3, 2020. On November 7, 2019, another privately retained attorney entered an appearance on behalf of Nollett, which allowed the first attorney to withdraw.

*Plea Hearing.*

Two months later, Nollett agreed to a plea bargain at the final status hearing. In return for Nollett's no contest plea, the State amended the information to charge him with two Class IIIA felonies. Instead of going to trial and facing a minimum of 15 years' imprisonment for Class IA and Class II felonies, Nollett's plea bargain carried a maximum sentence of 3 years' imprisonment for each felony.

At the plea hearing, defense counsel confirmed that he reviewed the plea bargain with his client. The State had provided Nollett the second amended information that day, so the district court offered him an additional 24 hours to review it. Nollett waived the additional time. He also affirmed to the court that he had enough time to consider the plea, discuss it with his attorney, and understood its ramifications.

While providing the factual basis, the State described the evidence it collected. The State conducted a forensic interview and sexual assault examination performed after the victim's disclosure, in which a hair was found. A Y-STR test was conducted on the hair, which is a type of DNA testing, that revealed Nollett could not be excluded as a potential source of that DNA. The victim also described to the authorities how the alleged assaults took place, when they occurred, and how often. The district court accepted Nollett's plea, and after granting another motion to continue, the district court set sentencing for March 2020.

*Motion to Withdraw Plea.*

In February 2020, Nollett moved to withdraw his plea. Defense counsel argued that Nollett felt pressured to take the plea deal due to harsh time constraints and the disparity between the plea deal's potential sentence and the potential sentence he faced going to trial. Nollett testified at the hearing that while he was aware of the plea offer for several months, it was the DNA results that ultimately impacted his decision. Although defense counsel received the DNA results on December 19, 2019, Nollett testified that counsel first spoke with him about the DNA results on January 5, 2020, and they did not speak at length about the results until the following day. Nollett recounted that after they spoke about the DNA results, counsel told him the plea offer would expire at the status hearing the next day.

Nollett stated he felt he did not have a choice but to take the plea. He explained that by taking the plea, he would face a maximum sentence of 3 years' imprisonment on each charge, but if he refused the plea and was found guilty, he faced a minimum sentence of 15 years. He stated he also attributed the DNA results as a source of this pressure to take the plea, in part, because his attorney had not explained the details surrounding the results. It was the culmination of the lack of clarity about the DNA results and the pressure from the benefit of the plea bargain that led Nollett to have second thoughts on accepting the plea.

Despite alleging harsh time constraints, Nollett admitted on cross-examination that he had received the terms of the plea offer on October 10, 2019, through conversations with his original attorney.

The district court denied Nollett's motion to withdraw his plea at the conclusion of the hearing. It explained that the DNA evidence did not exonerate Nollett and granting the motion would prejudice the prosecution. Ultimately, the district court concluded that Nollett failed to provide clear and convincing evidence to permit him to withdraw his plea.

*Sentencing.*

In his allocution, defense counsel compared Nollett's plea of no contest to an Alford plea, in which one accepts a plea for the benefit of the bargain, while maintaining one's innocence. See Alford Plea, Black's Law Dictionary, 11th ed. (2019). Counsel argued Nollett's recidivism results would have been lower, except that his maintained innocence impacted his score. While all the recidivism tests scored as low or medium risks, the district court questioned their reliability given Nollett's defensiveness and attempts to paint himself in a better light by manipulating the test results.

The district court sentenced Nollett to 2 years' incarceration with 18 months' post-release supervision for each Class IIIA felony to be served consecutively. The district court also gave Nollett credit for 116 days served.

*Direct Appeal.*

Nollett's direct appeal assigned that the district court erred in considering the polygraph results during sentencing, failing to consider all mitigating facts, sentencing Nollett to incarceration instead of probation, and overruling his motion to withdraw his plea. This court subsequently affirmed Nollett's conviction and sentence. *State v. Nollett*, 29 Neb. App. 282, 953 N.W.2d 57 (2020).

In finding no abuse of discretion in the court's refusal to allow Nollett to withdraw his plea, we observed that a defendant cannot withdraw their plea simply because they changed their mind, and Nollett had not provided any other evidence to support his withdrawal. *Id*. We noted that Nollett admitted he benefitted from the plea bargain when he pointed out "who is not going to take that deal?" *Id*. at 286, 953 N.W.2d at 62. This comment revealed that he understood the choices presented to him and additional time would not have changed his decision. *State v. Nollett, supra*. We also disposed of his other assigned errors, concluding that the district court has broad discretion to consider evidence in determining its punishment at the sentencing stage and Nollett's sentence was not excessive. *Id*.

*District Court Denies Postconviction Motion for Relief.*

Subsequent to our mandate, Nollett's second counsel moved to withdraw as counsel. A third attorney entered her appearance on behalf of Nollett on May 5, 2021, and prior counsel was allowed to withdraw.

On May 24, 2021, Nollett filed a verified motion for postconviction relief and requested an evidentiary hearing. Nollett argued his trial counsel was deficient in violation of both the U.S. Constitution and Nebraska Constitution. Nollett specifically raised five deficiencies: trial counsel did not timely disclose or explain the Y-STR DNA test to him, trial counsel did not inspect the hair sample obtained during the physical examination of the victim, trial counsel did not request a second deposition of the victim to determine what kind of hair was located for the DNA testing, trial counsel waited too long to tell Nollett the results of the DNA test, and trial counsel was ineffective for not asking for an extension of the plea offer.

The district court overruled Nollett's request for an evidentiary hearing and dismissed his postconviction motion. The district court held Nollett failed to satisfy his burden and the files and records show no evidentiary hearing was warranted. The district court found Nollett's arguments that focused on his regret to enter into the plea bargain were duplicative of his arguments on direct appeal, so the record affirmatively refuted his claim that he was prejudiced by counsel's actions. It also found under the circumstances surrounding the plea deal and DNA, Nollett failed to show a reasonable probability that the result of the proceedings would have been different. Nollett appeals.

## ASSIGNMENTS OF ERROR

Nollett assigns five errors. He claims the district court erred in denying him an evidentiary hearing because counsel was deficient for (1) not looking at the hair recovered and explaining the difference between Y-STR DNA and conventional autosomal DNA, (2) not filing a *Trammell* motion for the victim's medical records, (3) not requesting a continuance of the status hearing or an extension of the plea agreement, (4) not requesting a second deposition of the victim, and (5) not conducting the motion to withdraw plea hearing correctly.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

## ANALYSIS

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Martinez, supra.*

The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *State v. Jaeger, supra*. However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id*. An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, and that this deficient performance actually prejudiced his or her defense. *Id*. To satisfy the prejudice requirement in the context of a plea, the defendant must show that his or her counsel erred and there is a reasonable probability that but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial. *Id*. Additionally, the likelihood of the defendant's success had he insisted on trial is relevant to the prejudice analysis. *State v. Manijikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The benefit of the plea bargain, the strength of the State's case, and the penalties the defendant would have faced if convicted at trial should all be considered as well. *Id*.

Because Nollett's second counsel represented him both at trial and on direct appeal, this motion for postconviction relief was Nollett's first opportunity to assert ineffective assistance of counsel against him. See *State v. Martinez, supra*. As to allegations of ineffective assistance of initial counsel, however, to the extent those claims could have been brought on direct appeal, they are procedurally barred. See *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009) (claims of ineffective assistance of counsel that could have been raised on direct appeal are procedurally barred).

We address each assigned error as follows, keeping in mind the overall benefit Nollett received by accepting the plea.

*Failure to View Hair and Explain Y-STR DNA Testing.*

In his postconviction motion, Nollett asserted that had counsel looked at the hair, he would have been able to present evidence of what type of hair was actually discovered. He asserted that "If it is an arm hair, pubic hair, or hair from [his] scalp is an important factor in whether the State could prove its case." He concludes he would have insisted on going to trial had counsel viewed the hair. But Nollett does not allege that viewing the actual hair would have led to exculpatory evidence; rather, he only presents different areas of the body from which the hair could have come. Consequently, Nollett's allegations that counsel was ineffective in failing to view the hair did not require an evidentiary hearing. See *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018) (allegations of ineffectiveness are too speculative to require evidentiary hearing if petitioner fails to allege what exculpatory evidence would have been found).

Nollett also alleges that counsel did not discuss with him the DNA results until January 6, 2020, one day prior to the final status hearing, and failed to explain what Y-STR DNA testing was.

Specifically, Nollett asserts that because Y-STR DNA could not conclusively identify him, counsel was ineffective in failing to explain that to him.

Y-STR DNA tests only the Y-chromosome of a DNA sample, which is found only in males and is passed from father to son. *State v. Simmer*, 304 Neb. 369, 935 N.W.2d 167 (2019). Because Y-STR DNA identifies only the Y-chromosome, it cannot conclusively identify a single man. *Id*. Y-STR is not conclusive, but it can still be probative. See *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018) (explaining value of Y-STR DNA is like shoe imprint evidence). The Y-STR DNA results do not definitively confirm Nollett's DNA, but it does confirm the presence of his Y-chromosome, which would only be shared by him and his male siblings on the paternal side of his family.

Nollett cannot prevail on this claim because he failed to allege how his counsel's conduct prejudiced him, and the record refutes any prejudice. Nollett knew he had submitted to DNA testing and was aware of the plea offer before the DNA results, as he first received the plea offer in October 2019 and consented to a DNA swab in November. Nollett did not allege any facts to support why he would have insisted on trial if counsel had explained to him that Y-STR DNA was limited to the Y-chromosome. The Y-STR DNA revealed that a hair found on the victim had a Y-chromosome that matched Nollett and his paternal, male kin—none of whom live in Nebraska or are alleged to have had contact with the victim. Nollett did not plead that the hair recovered from the victim could have belonged to any of his brothers.

Nollett makes a conclusory allegation that had he known the meaning of Y-STR, he would have insisted on going to trial. But he fails to provide any factual allegations to support this argument. Furthermore, Nollett received a substantial benefit from accepting the plea offer, and as we decided in his direct appeal, additional time would not have changed his mind. See *State v. Nollett*, 29 Neb. App. 282, 953 N.W.2d 57 (2020). Nollett failed to allege factual allegations that, if proven, he would have insisted on going to trial. Therefore, he did not plead the requisite factual allegations to merit an evidentiary hearing.

Nollett compares this case to *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011), but his reliance is misplaced. *Yos-Chiguil* held the defendant's allegations merited an evidentiary hearing as to whether his counsel was ineffective for not informing him of an intoxication defense that could negate an element of the charged crime. *Id*. The *Yos-Chiguil* Court determined that although the record did not affirmatively show the defendant was entitled to relief, defendant's pleadings stated a claim. *Id*. Unlike the affirmative defense in *Yos-Chiguil*, the difference between Y-STR DNA and the conventional autosomal DNA is a matter of probability, and it does not exonerate Nollett. See *State v. Tucker, supra*. Counsel's failure to explain to Nollett that Y-STR is less probative than autosomal DNA is not akin to a failure to inform a defendant of a defense that could negate an element of the crime charged and thus exonerate him.

*Failure to File* Trammell *Motion for Victim's Medical Records.*

Nollett also alleges that both of his trial counsel were ineffective because they failed to file a *Trammell* motion for the victim's medical records. Nollett asserts that within the victim's medical records are inconsistent statements about the timeframe and frequency of the abuse, which he would use to impeach the victim's credibility. On appeal, he argues that the success of his alibi defense would also be greatly increased if he knew how many days the allegations involved.

A *Trammell* motion allows a defendant to attain privileged information if they show reasonable grounds to believe that without the privileged information, their right to confrontation would be infringed. *State v. Trammell*, 231 Neb. 137, 435 N.W.2d 197 (1989). A *Trammell* motion is about discovery though, not about cross-examination, and whether the defendant should be able to access the information despite the privilege. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). If the movant provides reasonable grounds to show they would be prejudiced without the privileged information, then the district court must either obtain the witness' consent or preclude their testimony. *State v. Trammell, supra.*

Nollett failed to plead sufficient factual allegations that would show prejudice without the victim's medical records. The alleged inconsistent statements revolve around the timing and frequency of the assaults. The victim never denied the abuse took place. The uncertainty of the timing was already known to Nollett because the State amended the information to extend the original timeframe from November 19 to December 9, 2018. Furthermore, Nollett's counsel received the police reports during discovery and they reveal that the victim "would state in some parts of the interview that this happened every day, but then at other times she stated that it would happen most days." The investigator concluded that "It was evident that [the victim] was having a hard time putting together a timeline of the incidents." Given the inconsistency contained in other documents received, counsel's failure to obtain the victim's medical records for purposes of obtaining impeachment material did not prejudice Nollett.

Furthermore, considering the victim's disclosure, the forensic interview, the results of the Y-STR DNA, and the benefit of the plea, Nollett has not shown a reasonable probability that he would have insisted on going to trial had he had the victim's medical records.

*Failure to Request Plea Deal Extension or Continuance.*

Nollett asserted in his postconviction motion that his counsel was ineffective because he failed to request that the State extend the time in which to accept the plea offer or request the court to continue the status hearing. He argues on appeal that he was misled by counsel's use of the term "DNA" without an explanation of the difference between Y-STR and autosomal DNA and had he known the difference, he would have insisted on going to trial. Brief for appellant at 24.

Nollett has asserted no facts that the State would have agreed to extend the plea offer. In fact, the record refutes such a position. Nollett's counsel contacted the State on January 6, 2020, to inquire whether the October plea offer was still available. He was advised at that time that it was, but that if Nollett did not accept it before the hearing the next day, it would be revoked. And at the hearing on Nollett's motion to withdraw his plea, the State questioned Nollett regarding the amount of time he had to consider the plea offer, referring to January 7 as "the last opportunity [he] had to take advantage of a plea agreement." Because the record refutes that a request for an extension of the plea offer would have been granted, counsel was not ineffective for failing to request one.

The record also refutes that counsel was ineffective for failing to request a continuance of the status hearing on January 7, 2020. The court specifically advised Nollett that he had the right to be formally served with the second amended information at least 24 hours prior to a hearing, and because he had just received the pleading that morning, he had the choice of continuing the hearing or waiving that right. He stated he wished to waive it. Therefore, Nollett was given the

opportunity for a continuance and he chose to waive it. Counsel was not ineffective in failing to request a continuance of the hearing.

*Failure to Request Second Deposition of Victim.*

Nollett also asserted in his postconviction motion that counsel was ineffective for failing to request a second deposition of the victim. He asserted that this was necessary so counsel could inquire into the type of hair that was located during her sexual assault exam and when it was located. He claims that without this information, he entered his plea without knowing all pertinent information against him.

On appeal, Nollett argues that because he was ordered to submit to DNA testing after the victim's deposition was taken by his first counsel, his second counsel should have requested a second deposition to inquire about the hair that was located during the victim's exam. We note, however, that the hair would have been recovered during the victim's examination which occurred in December 2018 while Nollett was represented by his first counsel and prior to the victim's deposition.

Nollett fails to assert any facts regarding the hair that would have been obtained from the 14-year-old victim that would have led him to reject the plea and insist on going to trial. Moreover, regardless of any facts regarding the hair, the totality of the circumstances show that Nollett made a calculated decision not to gamble with a minimum 15-year sentence, but to instead accept a plea offer that would result in a maximum sentence of 6 years. Nollett cannot show he was prejudiced by counsel's failure to depose the victim a second time.

*Deficient Performance at Motion to Withdraw Hearing.*

Finally, Nollett asserts that counsel did not conduct the hearing on the motion to withdraw his plea correctly because he failed to inform the court that he did not fully explain to Nollett about the Y-STR DNA evidence prior to him accepting the plea. He does not assert that had counsel made this disclosure, he would have been allowed to withdraw his plea.

On appeal, Nollett argues that counsel failed to "ask the proper questions" regarding Nollett "being incorrectly advised of the evidence." Brief for appellant at 25. He claims counsel should have asked questions to elicit what details Nollett was told about the DNA results because the answers would have revealed that counsel did not advise him that "there was no DNA linking him to an assault, the Y-STR data was present for all males in his family, that an unknown type of hair was tested for the Y-STR data and that the State still did not have any physical evidence positively identifying [] Nollett." Brief for appellant at 25.

In determining whether counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). There must be a showing that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). To show prejudice, there must be a showing that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

The right to withdraw a plea is not absolute, and a district court has discretion in deciding to sustain the motion to withdraw. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). A court may sustain the motion for any fair and just reason, granted that the withdrawal will not

substantially prejudice the prosecution. *Id*. The defendant carries the burden and must demonstrate the grounds for withdrawal by a clear and convincing standard. *Id*.

Nollett does not provide any factual allegations to indicate that but for counsel's performance, the district court would have granted his motion to withdraw his plea. The district court specifically asked counsel if the Y-STR DNA exonerated Nollett, to which counsel replied in the negative. The district court denied the motion after noting how long the case had been pending, acknowledging that it would be a waste of judicial resources to grant the motion, and highlighting the length of time the plea offer was open. There is no indication in the record that the motion would have been granted had counsel's inquiry been different, and as explained below, the record indicates the decision likely would not have been different.

Nollett argued in his brief that counsel did not advise him that "there was no DNA linking him to an assault, the Y-STR data was present for all males in his family, that an unknown type of hair was tested for the Y-STR data and that the State still did not have any physical evidence positively identifying [] Nollett." Brief for appellant at 25. But as stated previously, Nollett underestimates the probative value of the Y-STR DNA results, and the results did link him to the assault. Following receipt of the results, the State was unwilling to recommend probation or concurrent sentences, indicating the weight the prosecution gave the evidence. Nollett is correct that his male siblings would carry the same Y-STR DNA; however, the presentence investigation reveals that none of those siblings would likely have had contact with the victim and Nollett does not argue otherwise. Therefore, the Y-STR DNA was probative, regardless of what part of Nollett's body the hair came from.

CONCLUSION

We conclude that Nollett either did not plead an adequate factual basis that, if proven, would reveal prejudice, or that the record refuted his allegations. Therefore, he was not entitled to an evidentiary hearing, and we affirm the district court's order.

AFFIRMED.